UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
:
RICHARD TROY, :
:
Petitioner, :
: 05 Civ. 1306 (GEL)
v. :
: **OPINION AND ORDER**
CRAIG APKER, :
:
Respondent. :
:
------------------------------------------------------------x

GERARD E. LYNCH, District Judge:

      Richard Troy, a federal prisoner, filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the policy of the Bureau of Prisons (BOP) not to consider prisoners for designation to a community corrections center ("CCC") until the last ten percent of their terms. The petition appeared to present a challenge to the BOP policy promulgated in December 2002, which the Court had adjudicated in favor of petitioners in several prior cases. See, e.g., Darden v. Menifee, No. 04 Civ. 2145 (GEL) (S.D.N.Y. April 22, 2004) (adopting Judge Holwell's analysis of the statute in Zucker v. Menifee, 03 Civ. 10077 (RJH), 2004 WL 102779, at *6-*10 (S.D.N.Y. Jan. 21, 2004)); Quintero v. Menifee, No. 04 Civ. 1597 (GEL) (S.D.N.Y. April 5, 2004) (same). Accordingly, the Court directed the government to respond within a short period of time on the very limited questions of whether there was anything unique about the case that distinguished it from those prior cases, and whether any additional legal authority not cited to the Court in those cases should alter the Court's conclusion on the legal issues.

The government responded as directed, informing the Court that the challenged December 2002 policy had been replaced by new BOP regulations, effective February 14, 2005, see 28 C.F.R. §§ 570.20–.21, and that these regulations, and not the December 2002 policy will govern petitioner's CCC determination. The government requested additional time to respond fully to the merits of the petition, agreeing to treat it as a challenge to the February 2005 regulations, and a briefing schedule was established by the Court. The petition is now fully briefed and ripe for adjudication.

The litigation over the December 2002 policy and the consequent promulgation of the February 2005 regulations has been well-documented. See, e.g., Pimentel v. Gonzales, 367 F. Supp. 2d 365, 367–69 (E.D.N.Y. 2005). It suffices to note here that the February 2005 regulations acknowledge the BOP's unlimited discretion to designate prisoners for CCC placement at any point during their sentence under 18 U.S.C. § 3621(b)—thus remedying the interpretation of 18 U.S.C. § 3624(c) as limiting that discretion, which this Court among many others had determined to be erroneous—but purport to exercise that discretion categorically to limit the period for which an inmate may be placed in a CCC to the last ten percent of his or her term. As applied to the instant case, the February 2005 regulations, like the December 2002 policy before them, limit petitioner's eligibility for CCC placement to the last ten percent of his twenty-four month prison sentence, a period less than the placement for which he might have been eligible under the BOP's pre-December 2002 practice of routinely placing inmates in CCCs for the last six months of their terms.

The February 2005 regulations have already been the subject of numerous challenges, and have received mixed reviews. Compare Yip v. Federal Bureau of Prisons, 363 F. Supp. 2d 548

(E.D.N.Y. 2005) (upholding regulations); Levine v. Menifee, 05 Civ. 1902 (RCC), slip op. (S.D.N.Y. June 8, 2005) (same); Levine v. Apker, 05 Civ. 3472 (CLB), slip op. (S.D.N.Y. May 20, 2005) (same); Wiesel v. Menifee, No. 04 Civ. 9681 (DAB), 2005 WL 1036297 (S.D.N.Y. May 2, 2005) (same), with Pimentel, 367 F. Supp. 2d at 365 (invalidating regulations); United States v. Paige, 369 F. Supp. 2d 1257 (D. Mont. 2005) (same); Wiederhorn v. Gonzales, No. Civ. 05-360-TC, 2005 WL 1113833 (D. Or. May 9, 2005); Cook v. Gonzales, No. Civ. 05-09-AS, 2005 WL 773956 (D. Or. Apr. 5, 2005) (same); Drew v. Menifee, No. 04 Civ. 9944 (HBP), 2005 WL 525449 (S.D.N.Y. Mar. 4, 2005) (same).

Although diverging on the ultimate issue of the validity of the regulations, these courts have agreed that under Supreme Court precedent, the BOP "has the authority to rely on rulemaking to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority." Lopez v. Davis, 531 U.S. 230, 244 (2001), quoting Am. Hosp. Ass'n v. NLRB, 499 U.S. 606, 612 (1991). Those courts rejecting the regulations have done so not because of the categorical nature of the new regulations per se, but because, in their view, the BOP has exceeded its authority in that "the enabling statute provides specific factors relevant to whether CCC placement may be appropriate prior to the last ten percent of a prisoner's sentence," and the February 2005 regulations "in no way further[] or interpret[] these factors [but] disregard[] them." Pimental, 367 F. Supp. 2d at 374–75. Accordingly, while the BOP would have the authority to promulgate rules categorically exercising its discretion under § 3621(b), provided those rules "relate[] to or consider[]" the factors articulated in § 3621(b), e.g., "that the nature and circumstances of a particular offense [factor (2)] or the history and characteristics of a class of offender [factor (3)] present concerns that outweigh the other factors

3

in Section 3621(b)," the February 2005 regulations are invalid because they do not engage the statutory factors. Id.

This analysis is thoughtful, but ultimately unpersuasive. The Court agrees with those courts, cited above, which have upheld the regulations as a permissive exercise of the discretion accorded the BOP under § 3621, and adopts their analyses as its own. The following additional comments seem appropriate. First, in formulating and proposing the new regulations, the BOP did explicitly consider two of the factors contained in § 3621(b) (facility resources; policy statements of the Sentencing Commission), as well as the general prohibition in § 3621(b) of favoritism for inmates of high social or economic status. See Community Confinement, 69 Fed. Reg. 51,213, 51,214 (proposed Aug. 18, 2004). By implication, the BOP has determined that those factors categorically outweigh any of the other factors in § 3621(b) which might tend toward earlier CCC placement in an individual case, and has thus engaged in precisely the sort of categorical decisionmaking appropriate even under the reasoning in Pimental.

Second, a slightly different question is presented by the scope of the BOP's discretion to transfer an inmate to a CCC, rather than to initially designate an inmate to a CCC. Under the February 2005 regulations, no inmate will be designated to a CCC to serve the entirety of his or her term, and, in accordance with the reasoning above, this is a permissible, albeit categorical exercise of the BOP's designation discretion under § 3621(b). Following initial designation, however, a prisoner has no statutory entitlement to consideration for transfer to any facility, including CCCs, prior to the point at which § 3624(c) requires that the BOP, "to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will

4

afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community." Apart from the congressional policy expressed in § 3624(c), the timing of transfers is clearly within the discretion of the BOP, which "may at any time, having regard for the same matters [i.e., the § 3621(b) factors and a prohibition of favoritism for prisoners of high social or economic status], direct the transfer of a prisoner from one penal or correctional facility to another." 18 U.S.C. § 3621(b).

Prior to December 2002, it appears to have been the categorical policy of the BOP to consider an inmate for transfer to a CCC when he or she had six months remaining on his or her term; after December 2002, it is the categorical policy of the BOP to consider an inmate for transfer to a CCC no earlier than as required under § 3624(c). Both policies appear to be equally categorical and equally permissible, given that the timing of transfers (except as limited by § 3624(c)) is clearly committed to the discretion of the BOP under the statutory language. It is by no means clear that the § 3621(b) factors bear at all on the timing of consideration for transfer, rather than the substantive decision whether or where to transfer the prisoner. See Yip, 363 F. Supp. 2d at 552 ("[A]ssuming *arguendo* that there were a requirement that the BOP make individual determinations when transferring inmates, it would apply only when the BOP has elected to consider whether to make a transfer.")

Even if the § 3621(b) factors apply equally to designation decisions themselves and the timing of transfers, the February 2005 regulations are valid because they represent the permissible, categorical exercise of the discretion statutorily granted to the BOP. It can reasonably be argued that it is counterproductive for the BOP to contract the amount of time for which inmates serving less than sixty month sentences are eligible for CCC placement, given the

5

importance of such placement in preparing inmates for successful reintegration upon release and the paradoxical effect of confining inmates who have shorter terms of imprisonment, and are presumably less dangerous and more amenable to rehabilitation, out of community confinement and in higher-security institutions. That argument, however, is properly addressed to the discretion, judgment, and expertise of the BOP, and the Court cannot say that it has acted unlawfully in rejecting it.

Petitioner has argued in the alternative that even if the February 2005 regulations are valid, they nonetheless violate the Ex Post Facto clause as applied to him because they came into effect after his conviction and initial incarceration in June 2004. The February 2005 regulations do alter the conditions of petitioner's confinement by limiting the period of time in which he may serve out that confinement in a lower security facility. Those altered conditions, however, do not have the purpose and effect of increasing punishment, and therefore, do not rise to the level of an ex post facto violation. Cf. Lee v. Governor of State of New York, 87 F.3d 55 (2d Cir. 1996) (state law restricting eligibility of certain classes of inmates to participate in temporary release program did not increase punishment and did not constitute ex post facto violation).

Accordingly, the petition for a writ of habeas corpus pursuant to § 2241 is denied.

SO ORDERED.

Dated: New York, New York
June 30, 2005

_____
GERARD E. LYNCH
United States District Judge